IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIM SCHMITZ,

        Plaintiff,

   v.

EVAN GARRISON, in his individual capacity, and BRIAN WILLARD, in his individual capacity,

        Defendants.

Case No. 3:24-cv-01603-AB

OPINION & ORDER

Justin R. Steffen
Steffen Legal Services, LLC
2100 SE Lake Rd., #5
Milwaukie, OR 97222

    Attorney for Plaintiff

Kenneth S. Montoya
Keegan Murphy
Montoya Law LLC
350 Mission Street SE Suite 202
Salem, OR 97302

    Attorneys for Defendant Brian Willard

1 – OPINION & ORDER

**BAGGIO, District Judge:**

    Plaintiff Tim Schmitz brings this case against Defendants Brian Willard and Evan Garrison,[1] Oregon City police officers. Plaintiff brings one claim under 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's Fourth Amendment rights by using excessive force during a traffic stop. Compl. ¶¶ 2, 6, ECF No. 1. Defendant Willard moves for summary judgment on Plaintiff's claim. Def. Willard's Mot. Summ. J. ("Def.'s MSJ"), ECF No. 17. The Court heard oral argument on Defendant Willard's Motion on November 12, 2025. For the reasons described below, the Court grants Defendant Willard's Motion.

## BACKGROUND

    On October 27, 2022, Defendants pulled Plaintiff's vehicle over as part of a traffic stop in Oregon City, Oregon. Schmitz Decl. ¶ 2, ECF No. 21; Willard Decl. ¶ 5, ECF No. 18. Defendant Garrison was an officer in training, and Defendant Willard was his supervisor. Willard Decl. ¶ 4. Defendant Garrison initiated the traffic stop because Plaintiff's vehicle was "failing to maintain its lane." *Id.* ¶¶ 4–5. Defendant Garrison activated the patrol vehicle's overhead lights, and Defendant Willard's body camera automatically started recording. *Id.* ¶ 6; *see also* Willard Decl. Ex. A (Defendant Willard's body camera footage), ECF No. 19.

    After Defendants stopped Plaintiff's vehicle, Defendant Garrison approached to speak with Plaintiff. Willard Decl. ¶ 5; Willard Decl. Ex. A, at 0:39–47. Early in the traffic stop, Defendant Garrison asked Plaintiff to place his hands on his steering wheel, but Plaintiff refused. Willard Decl. ¶ 8; Willard Decl. Ex. A, at 0:55–59. Plaintiff provided a copy of his driver's license upon request but refused to provide his vehicle registration and proof of insurance

---

[1] At oral argument, Plaintiff agreed to voluntarily withdraw his claim against Defendant Garrison. For clarity, the Court will continue to use the phrase "Defendants" to describe joint conduct between Officers Garrison and Willard.

2 – OPINION & ORDER

"unless Officer Garrison stopped shining his flashlight on him." Willard Decl. ¶ 9; Willard Decl. Ex. A, at 3:30–40. Defendants did not force the issue and returned to their patrol vehicle to look up Plaintiff's registration and insurance. Willard Decl. ¶¶ 10–11; Willard Decl. Ex. A, at 3:39–56.

As Defendants returned to the patrol vehicle to run Plaintiff's information, Plaintiff stepped out of his vehicle. Willard Decl. Ex. A, at 3:56–59. In response, Defendant Willard walked back to Plaintiff's vehicle and "asked Plaintiff to have a seat back in the car . . . because [he] was concerned about officer safety and potential escape attempts." Willard Decl. ¶¶ 12–13. Plaintiff refused to return to his vehicle. *Id.* ¶ 14. Defendant Willard "attempted to explain that it was a safety precaution for the officers." *Id.* ¶ 15. Plaintiff responded, "for my safety, I'm getting out. My safety. I don't give a fuck about your safety." Willard Decl. Ex. A, at 4:19–24. Around the same time, Plaintiff walked toward Defendant Willard to retrieve his small dog, who had exited the vehicle as Plaintiff and Defendant Willard were talking. *Id.* at 4:14–23. Defendant Willard responded to Plaintiff's approach by backing away from Plaintiff. *Id.* After retrieving his dog, Plaintiff leaned against his vehicle, carried his dog with both arms, and held his phone in his right hand. *Id.* at 4:24–5:29. Plaintiff remained in this position for roughly one minute. *Id.*

Over the next minute, Plaintiff continued to argue with Defendant Willard. First, Plaintiff took issue with Defendant Willard's prior instructions to return to his vehicle, arguing that "it's not a lawful command." *Id.* at 4:24–26. Plaintiff then asked for Defendant Willard to "get your boss here, ask him." *Id.* at 4:29–31. Defendant Willard responded, "you're welcome to stand out here," and Plaintiff responded, "exactly, don't try that bullshit with me, alright? Like I said, my grandfather was chief of police of you fucks, okay? And I used to work for the sheriff's office so I know the fucking drill." *Id.* at 4:42–59. Defendant Willard asked what Plaintiff did at the

3 – OPINION & ORDER

"sheriff's office," and Plaintiff responded, "none of your fucking business." *Id.* at 5:00–04. Defendant Willard explained to Plaintiff, "I'm not saying you have to answer my questions," and Plaintiff responded, "exactly, I don't, and I don't think I will anymore." *Id.* at 5:10–15.

Plaintiff complained again that Defendant Willard was pointing a flashlight in Plaintiff's eyes. *Id.* at 5:16–22. Plaintiff told Defendant Willard that if he did not move the direction of his flashlight, "I'll take that as a sign of aggression and I'll fucking take you down." *Id.* Defendant Willard responded, "it's not in your eye[,]" but Plaintiff insisted that it was. *Id.* at 5:23–30. It appears by Defendant Willard's body camera footage that while the patrol vehicle's overhead lights shone on Plaintiff's face, Defendant Willard's flashlight did not. Indeed, throughout the video, the circle of light from Defendant Willard's flashlight remains on Plaintiff's torso. *Id.* at 3:59–5:32.

The parties disagree on the details of the events that followed. Defendant Willard claims that after Plaintiff said, "I'll fucking take you down," Plaintiff "raised his voice . . . and took two steps forward toward [him]." Willard Decl. ¶ 25. Plaintiff claims that he only "moved out of the way of the flashlight beam . . . ." Compl. ¶ 3. Defendant Willard's body camera footage shows that Plaintiff unfolded his arms, stood up from his prior reclined position, and advanced toward Defendant Willard in roughly one second. Willard Decl. Ex. A, at 5:30–31.

Shortly after Plaintiff advanced toward Defendant Willard, Defendant Willard extended his hand toward Plaintiff and made contact with Plaintiff's chest and told Plaintiff to "step back, step back now." *Id.* at 5:31–33. The parties disagree on the level of force Defendant Willard applied. Plaintiff states that Defendant Willard "punched [him] hard with a closed fist, knocking [him] back against [his] vehicle." Schmitz Decl. ¶ 3. Defendant Willard states that he only "employ[ed] some minimal force to protect [himself]" by pushing Plaintiff in the chest with an

4 – OPINION & ORDER

"open hand" to "create some space between [them] while again telling Plaintiff to 'step back.'" Willard Decl. ¶¶ 28–29.

After pushing or punching Plaintiff, Defendant Willard again warned Plaintiff "not to approach [him] and warned Plaintiff that he would be placed in handcuffs if he tried to do so again." *Id.* ¶ 31. Plaintiff responded by shouting at Defendant Willard, "touch me again" and "you fucking hit me for no fucking reason!" *Id.* ¶ 32; Willard Decl. Ex. A, at 5:32–50. While shouting at Defendant Willard, Plaintiff put his dog on the ground and turned back to face Defendant Willard. Willard Decl. ¶¶ 32–33; Willard Decl. Ex. A, at 5:40–50. As the confrontation between Plaintiff and Defendant Willard escalated, Defendant Garrison returned from the patrol vehicle and "told Plaintiff that he was going in handcuffs, and began trying to grab Plaintiff's arm." Willard Decl. ¶ 35; Willard Decl. Ex. A, at 5:50–53.

The parties also disagree about the details of Plaintiff's handcuffing. Defendant Willard claims that "Plaintiff pulled his hands in to his chest and resisted our efforts to move them behind his back." Willard Decl. ¶ 38. In response to this perceived resistance, Defendants gave Plaintiff multiple warnings and instructions to follow their orders. *Id.* ¶¶ 39–40. Defendants first warned Plaintiff "you're gonna go down to the ground if you do not do what we're telling you to do, do you understand me?" Willard Decl. Ex. A, at 5:58–6:02. Defendants next instructed Plaintiff to "put your hands behind your back. Stop resisting." *Id.* at 6:02–07. While trying to handcuff Plaintiff, Defendants next instructed Plaintiff twice to "let go of your phone," and Plaintiff responded, "no." *Id.* at 6:16–20. Defendants again instructed Plaintiff to "stop resisting," and Plaintiff responded, "I'm not fucking resisting." *Id.* at 6:20–23. Defendants responded, "yes you are, you're gonna get tased." *Id.* at 6:23–27. After struggling with Plaintiff for roughly forty seconds and after several warnings, Defendants "made the decision that [they]

5 – OPINION & ORDER

needed to take Plaintiff to the ground to place handcuffs on him." Willard Decl. ¶ 40. Plaintiff, by contrast, claims that he never actively resisted. Schmitz Decl. ¶ 4. Instead, Plaintiff states that he was not able to put his hands behind his back because of a prior shoulder injury, which Plaintiff "informed the officers of multiple times." *Id.*

Shortly before Defendants brought Plaintiff to the ground, Plaintiff explained to Defendants regarding his arms, "that's as far as they go, I've got bad fucking shoulders." Willard Decl. Ex. A, at 6:32–37. Defendants first brought Plaintiff to the ground and then agreed to use a chain of two handcuffs on Plaintiff. *Id.* at 6:37–7:05. Defendant Willard claims that they made this decision "to prevent strain on Plaintiff's arms and shoulders." Willard Decl. ¶ 42.

Once handcuffed, Defendant Garrison brought Plaintiff to his feet, searched Plaintiff, and placed Plaintiff in their patrol vehicle. Willard Decl. Ex. A, at 7:10–16:00. Paramedics then arrived on the scene, tended to Plaintiff, and placed Plaintiff into an ambulance to be transported to the hospital. *Id.* at 16:00–26:42. Before being transported, Defendant Garrison issued Plaintiff a citation for failure to maintain his vehicle in his lane. *Id.* at 31:41–51. Defendant Garrison also issued Plaintiff a citation for the crime of "interfering with police officer duties." *Id.* at 32:05–14.

Plaintiff alleges that both Defendants caused Plaintiff to sustain "soft tissue injuries to his neck, face, and left wrist, as well as multiple abrasions." Compl. ¶ 5. Plaintiff also alleges that he suffered a permanent injury to his right shoulder, which "exacerbate[ed] a pre-existing medical condition" and "required Plaintiff to get an MRI and undergo surgery on his right shoulder." *Id.* Plaintiff also states that, at the time of the incident, he "was 65 years old, weighed approximately 160 lbs. and suffered from various medical conditions that prevent [him] from being any kind of physical threat to anyone." Schmitz Decl. ¶ 5.

///

6 – OPINION & ORDER

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

///

///

7 – OPINION & ORDER

...

## DISCUSSION

Defendant Willard moves for summary judgment, arguing (1) that the circumstances underlying the traffic stop made it so "Defendant's use of force was reasonable" and (2) that he is entitled to qualified immunity because "Plaintiff is unable to show that Defendant's conduct was clearly unlawful so as to support liability." Def.'s MSJ 2. Because the Court finds that the unlawfulness of Defendant's conduct was not clearly established at the time of the underlying incident, the Court grants Defendant's motion for summary judgment.

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

But a defendant is entitled to qualified immunity from liability for civil damages under § 1983 if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity protects government officials from liability under § 1983 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (quoting *Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023)). As to the first prong, "whether a constitutional right was violated . . . is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). As to the second prong, "the 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018) (citing

8 – OPINION & ORDER

*Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts have discretion in deciding which prong to address first but should choose "the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

To facilitate the fair and efficient disposition of this case, the Court will start with the second prong of the qualified immunity test. This is because, even if there were a constitutional violation, the law was not clearly established at the time of the incident such that Defendant Willard's actions amounted to a constitutional violation.

Defendant Willard argues that "Plaintiff is unable to show that Defendant's conduct was clearly unlawful so as to support liability." Def.'s MSJ 2. For a right to be clearly established, it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In conducting this analysis, courts must "not . . . define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Doing so "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). The relevant question here, then, is whether clearly established law prohibited Defendant Willard "from using the degree of force that he did in the specific circumstances that the officers confronted." *O'Doan v. Sanford*, 991 F.3d 1027, 1037 (9th Cir. 2021). The plaintiff bears the burden of "point[ing] to prior case law that articulates a constitutional rule specific enough to alert these officers in this case that their particular conduct was unlawful." *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)).

9 – OPINION & ORDER

Plaintiff argues that the law has been clearly established since 2013 that "[t]he use of intermediate force is considered excessive when an individual is not actively resisting arrest" and that individuals have "the right to be free from such force . . . ."[2] Pl.'s Resp. Def.'s MSJ 2–3, ECF No. 20. As to both applications of force, Plaintiff quotes the rule in *Gravelet-Blondin v. Shelton* to argue that it was clearly established that the "failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Id.* at 3 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)).

In making these arguments, Plaintiff characterizes his Fourth Amendment right "at a high level of generality." *al-Kidd*, 563 U.S. at 742. The Supreme Court recently criticized the Ninth Circuit for its application of *Gravelet-Blondin* for the same reason:

> Under our precedents, the Court of Appeals' formulation of the clearly established right was far too general. To be sure, the Court of Appeals cited the *Gravelet-Blondin* case from that Circuit, which described a right to be 'free from the application of non-trivial force for engaging in mere passive resistance. . . .' Assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity . . . the Ninth Circuit's *Gravelet-Blondin* case law involved police force against individuals engaged in *passive* resistance. The Court of Appeals made no effort to explain how that case law prohibited Officer Craig's actions in this case. That is a problem under our precedents . . . .

*City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 43 (2019) (internal citations omitted). Thus, for Plaintiff to succeed, he must show how *Gravelet-Blondin* would have put Defendant Willard on notice that the force he applied was prohibited.

---

[2] In resolving this motion, the Court views the facts in the light most favorable to Plaintiff and, therefore, assumes that Defendant Willard punched Plaintiff.

10 – OPINION & ORDER

But *Gravelet-Blondin* does not address the specific circumstances that are present in this case. In *Gravelet-Blondin*, the plaintiff was standing thirty-seven feet from the police officer defendant because the plaintiff "saw officers holding [the plaintiff's neighbor] on the ground." 728 F.3d at 1090. The officers then "ran towards [the plaintiff], pointing a taser at him and yelling at him to 'get back.'" *Id*. In response, the plaintiff "appeared frozen with fear, and . . . made no threatening gestures." *Id*. (internal quotation marks omitted). Next, the defendant "began to warn [the plaintiff] that he would be tased if he did not leave, but fired his taser before [the defendant] had finished giving that warning." *Id*. The defendant specifically tased the plaintiff "in dart mode," which "knock[ed] him down and caus[ed] excruciating pain, paralysis, and loss of muscle control." *Id*. The court found that "there was no reason to believe, based on [the plaintiff's] behavior, demeanor, and distance from the officers, that he posed an immediate threat to anyone's safety." *Id*. at 1091.

Here, by contrast, the distance between Plaintiff and Defendant Willard was far less than thirty-seven feet. *See* Willard Decl. Ex. A, at 5:20 (Plaintiff was a few feet away from Defendant Willard). Plaintiff was also not "frozen with fear," but instead threatened to "take [Defendant Willard] down[,]" advanced toward Defendant Willard, and got "within arm's reach" of Defendant Willard. Willard Decl. ¶¶ 20, 25–26. Additionally, Defendant Willard did not use a taser. Rather, Defendant Willard punched Plaintiff and later brought Plaintiff to the ground to handcuff him. Willard Decl. Ex. A, at 5:30–7:10. Because "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established[,]'" this case is too factually distinct for the relatively general rule in *Gravelet-Blondin* to apply to this case. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017) (quoting *Mullenix*, 577 U.S. at 11).

11 – OPINION & ORDER

At oral argument, Plaintiff also raised *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), to argue that "[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." But Plaintiff has not explained how Defendant Willard's punch or handcuffing are "novel" methods of force. Moreover, *Mendoza*, like *Gravelet-Blondin*, does not address how Defendant Willard should have responded to the specific circumstances that he confronted in this case. In *Mendoza*, the defendant officers "put a gun to [the plaintiff's] head[,]" used a police dog that "bit down hard, puncturing [the plaintiff's] skin[,]" and hit the plaintiff "on the head from behind with something hard." *Id.* at 1358. Those applications of force are too different for *Mendoza* to apply in this case.

Additionally, on its own review, the Court has not found law that clearly establishes that the type of force Defendant Willard used against Plaintiff in response to the specific circumstances of this case—either in punching[3] Plaintiff or taking Plaintiff to the ground to handcuff him[4]—violated Plaintiff's Fourth Amendment rights. Accordingly, Plaintiff has not met

---

[3] The Ninth Circuit has held that punches can constitute excessive force under certain circumstances. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) (holding "force is only justified when there is a need for force. . . . This same principle would also adequately put a reasonable officer on notice that punching [the plaintiff] to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed, was also a Fourth Amendment violation"); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1057 (9th Cir. 2007) (holding "[a]ny reasonable officer in [the defendant's] position would have known . . . that swinging a handcuffed man into a wall head-first multiple times and then punching him in the face while he lay face-down on the ground, and breaking his neck as a result, was unnecessary and excessive"); *Orr v. Brame*, 727 F. App'x 265, 267–68 (9th Cir. 2018) (finding it "'rarely necessary, if ever, for a police officer to employ substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to officer or public safety'" (quoting *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1166–67 (9th Cir. 2011))). However, the severity of the punches and the underlying facts of these cases are too different from this case to put Defendant Willard on notice that his single punch would violate Plaintiff's Fourth Amendment rights.

[4] The Ninth Circuit has also recognized constitutional violations in at least two cases in which officers have taken suspects to the ground. *See Blankenhorn*, 485 F.3d at 479–80 ("The lack of forewarning, the swiftness, and the violence with which the defendant officers threw

12 – OPINION & ORDER

his burden to show that it was clearly established that the use of force applied by Defendant Willard in this case constitutes excessive force. Defendant Willard is therefore entitled to qualified immunity.

## CONCLUSION

The Court GRANTS Defendant Willard's Motion for Summary Judgment [17]. Defendant Willard is entitled to qualified immunity. Pursuant to Plaintiff's voluntary dismissal of Defendant Garrison at oral argument, the Court also dismisses Defendant Garrison from this case.

IT IS SO ORDERED.

DATED this 24th day of November, 2025.

*Amy M. Baggio*
_____
AMY M. BAGGIO
United States District Judge

---

themselves upon [the plaintiff] could reasonably be considered 'provocative,'. . . thus making their later use of the hobble restraints unreasonable."); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) ("We cannot say as a matter of law that a jury could not conclude that taking a passive individual to the ground with force sufficient to break his back was excessive."). Again, the facts in these cases differ considerably from the facts presented in the current case.

13 – OPINION & ORDER